UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JEFFREY V. GOLIK,                    )
                                     ) No. CV-06-0203-MWL
          Plaintiff,                 )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,[1]               )
                                     )
          Defendant.                 )
                                     )
_____)

     BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on March 26, 2006. (Ct.
Rec. 15, 20).  Plaintiff Jeffrey V. Golik ("Plaintiff") did not
file a reply brief in the case.  Attorney Lana C. Glenn represents
Plaintiff; Special Assistant United States Attorney Johanna
Vanderlee represents the Commissioner of Social Security
("Commissioner").  The parties have consented to proceed before a
magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 20)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 15).

---

     [1]As of February 12, 2007, Michael J. Astrue succeeded Defendant Acting
Commissioner Linda S. McMahon as the Commissioner of Social Security.
Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue should
be substituted as Defendant, and this lawsuit proceeds without further action
by the parties.  42 U.S.C. § 405(g).

**JURISDICTION**

On November 26, 2002, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since February 1, 1994, due to back pain, neck pain, fibromyalgia, right knee pain and left shoulder pain. (Administrative Record ("AR") 78-81, 91).  The application was denied initially and on reconsideration.  Hearings were held before Administrative Law Judge ("ALJ") Mary B. Reed on September 30, 2004, and March 17, 2005.  (AR 306-375, 376-408).  Testimony was taken from Plaintiff, vocational expert Fred Cutler, medical expert Dr. R. Thomas McKnight, Plaintiff's mother, Gladys D. Moore, and Plaintiff's friend, Tammie Wiggins.  (AR 306-408).  On April 29, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 18-34).  The Appeals Council denied a request for review on May 26, 2006.  (AR 7-10).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on July 17, 2006.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and Plaintiff's brief and will only be summarized here.  Plaintiff was 45 years old on the date of the ALJ's decision (AR 18), completed the 9th grade in high school (AR 97), and has past relevant work as a roofer and as a mover (AR 92).  Plaintiff indicated that he stopped working on February 1, 1994, because of acute and severe pain from his injuries.  (AR 91).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

///

///

///

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden

then shifts, at step five, to the Commissioner to show that (1)
Plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which
Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a
Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999). "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988). Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted). "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the Court considers the record as a whole, not just the
///

evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, February 1, 1994. (AR 19). At step two, the ALJ determined that Plaintiff has the severe impairments of status post fusion at L5-S1, status post left shoulder repair and degenerative joint disease of the right knee, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 26-27). The ALJ specifically ///

found that the evidence of record did not support a finding that Plaintiff's depression, fibromyalgia, and migraine headaches were severe impairments.  (AR 26-27).

The ALJ concluded that Plaintiff has the RFC to perform light work activity.  (AR 29).  The ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk about six hours in an eight-hour workday, push and pull without restriction other than as shown for lift and/or carry, occasionally engage in climbing ramps, stairs, ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch or crawl, and occasionally reach in all directions, including overhead with the left shoulder.  (AR 29-30).

At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of his past relevant work as a construction worker or moving van helper.  (AR 31).  However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which he could perform despite his limitations.  (AR 32-33).  Examples of such jobs included work as a cashier II, a fast food worker, an entry level retail sales clerk, an assembler, a courier/messenger, an agricultural sorter and a flagger.  (AR 32).  Accordingly, the ALJ determined, at step five of the sequential evaluation process, that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 33-34).

///

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that:

1.    The ALJ erred by relying on the testimony of the medical expert and rejecting the opinions of Plaintiff's treating physician, Dr. Seely;

2.    The ALJ erred by finding that Plaintiff was less than fully credible; and

3.    The ALJ erred by not relying on the vocational expert's testimony in response to a hypothetical that was supported by the medical evidence of record.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.    Plaintiff's Credibility**

Plaintiff argues that the ALJ's finding that Plaintiff was not fully credible was not properly supported.  (Ct. Rec. 16, pp. 35-39).  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons, supported by substantial evidence, to find that Plaintiff was not fully credible in this case.  (Ct. Rec. 21, pp. 9-14).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an

underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9ᵗʰ Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9ᵗʰ Cir. 1995).

The ALJ found that Plaintiff's subjective complaints regarding the extent of his functional limitations were not fully credible. (AR 28). The undersigned finds that the ALJ provided adequate reasoning for her determination in this regard. (AR 28-29).

As noted by the ALJ, medical evidence of record suggests that Plaintiff has displayed symptoms of exaggeration and malingering. (AR 28). Joyce Everhart, Ph.D., examined Plaintiff on November 8, 2004. (AR 265-276). In addition to other findings, Dr. Everhart noted that the mental examination revealed findings suggestive of exaggeration of symptoms and malingering. (AR 271). Dr. Everhart noted that the results of the Minnesota Multiphasic Personality Inventory 2 ("MMPI-2") revealed an invalid profile suggesting exaggeration of symptoms and; therefore, clinical scales could not be interpreted in a meaningful manner. (AR 271). Dr. Everhart further indicated that the results of the Rey 15 Item Visual Memory Test Revised suggested that Plaintiff was not making a credible effort and indicated malingering. (AR 271). The medical expert, Dr. McKnight, testified at the administrative hearing held on March 17, 2005 that it is "unheard of to score that low" on the Rey 15 Item test. (AR 382). He stated that he had never seen

anybody score as low as two.  (AR 382, 385).  Based on Dr.
Everhart's testing, Dr. McKnight indicated that Plaintiff was
"simply not credible."  (AR 385).

The ALJ also noted various inconsistencies with Plaintiff's
statements and reporting.  (AR 28-29).  Inconsistencies in a
disability claimant's testimony supports a decision by an ALJ that
a claimant lacks credibility with respect to his claim of
disabling pain.  42 U.S.C.A. § 423(d)(5)(A), *Nyman v. Heckler*, 779
F.2d 528, 531 (9th Cir. 1986).  As indicated by the ALJ (AR 28),
Plaintiff testified at the administrative hearing on September 30,
2004 that he never drank alcohol (AR 338-339), then admitted he
did (AR 340), then stated in a letter to the ALJ following the
hearing that he never drank before or since the incident in
September 2001 (AR 128), yet reported a history of alcohol and
drug use to Dr. Everhart (AR 269).[2]

Also inconsistent are Plaintiff's statements regarding
education, work history, and medical improvement.  (AR 28-29).
Plaintiff denied any other education to Dr. Everhart (AR 269),
reported additional training to Fred Price, D.O. (AR 171), yet
denied additional vocational training on his disability report (AR
97).  Plaintiff informed Dr. Everhart that he last worked in 1991
(AR 269), told George R. Monkman, M.D., he had not worked since
1992 (AR 257), yet he also reported he worked at a moving company
until 1994 (AR 92, 312).  (AR 29).  In fact, Plaintiff testified
that he last worked in "1994, when I owned my own business," (AR

---

[2]Dr. Price also noted that Plaintiff indicated alcohol use in the past
intermittently, but denied use at the time of the examination because of his
medications.  (AR 171).  Dr. Byrd also noted that Plaintiff admitted "minimal
alcohol" in the past.  (AR 136).

312), although there is no other evidence in the record indicating that Plaintiff had owned his own business.  As noted by the ALJ, Plaintiff also inconsistently told Jeffrey J. Larson, M.D., he had never improved after surgery when, in fact, he had previously reported significant improvement following surgery.  (AR 29, 157, 227).

The ALJ also indicated that Plaintiff has been noted to be vague and inconsistent in his statements to physicians regarding pain and multiple motor vehicle accidents.  (AR 28).  The ALJ indicated that Plaintiff is quoted as stating his pain completely limits him, yet he is observed to move about quickly and without observable problems (AR 271).  (AR 28).  Although Plaintiff complains continuously about significant pain and disability, Dr. Larson, a specialist, stated there was no anatomical reason for his pain (AR 227) and repeated examinations have found no neurological basis for his complaints.  (AR 29).  As noted by the ALJ (AR 29), Plaintiff has reported pain levels from eight to 10 on the pain scale and further reported that he is restricted to lying around for more than 23 hours during a day (AR 109), yet he has reported the ability to cook, shop, watch television and drive (AR 271, 337).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the

ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  After reviewing the record, and based on the foregoing, the undersigned finds that the ALJ provided clear and convincing reasons to conclude that Plaintiff's complaints were less than fully credible.

**B.  Medical Evidence**

Plaintiff contends that the ALJ erred by relying on the testimony of the medical expert, Dr. McKnight, and by rejecting the opinions of his treating physician, Dr. Seely.  (Ct. Rec. 16, pp. 33-35).  The Commissioner responds that the ALJ properly considered and evaluated the medical evidence of record.  (Ct. Rec. 21, pp. 14-18).

Plaintiff makes a cursory, two paragraph argument regarding the ALJ's review of the medical evidence of record in this case. (Ct. Rec. 16, pp. 33-35).  Plaintiff, however, does not provide specific argument about any individual physician or medical source opinion that was improperly rejected or improperly relied upon. (Ct. Rec. 16, pp. 33-35).  Plaintiff merely asserts that "[w]ithout the ALJ's reliance on the ME to discredit all other evidence indicating severe impairments, the ALJ does not have any evidence to support her finding."  (Ct. Rec. 16, p. 35).  The undersigned does not agree with this assertion.

The ALJ determined that Plaintiff retained the RFC to perform light work.  (AR 29).  Specifically, the ALJ held that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk about six hours in an eight-hour workday, push and pull without restriction other than as shown for lift and/or carry, occasionally engage in climbing

ramps, stairs, ladders, ropes and scaffolds, occasionally balance, stoop, kneel crouch or crawl, and occasionally reach in all directions, including overhead with the left shoulder.  (AR 29-30).  In making this determination the ALJ specifically rejected the opinions of Dr. Seely and, with respect to Plaintiff's mental impairments, gave weight to the testimony of the medical expert, Dr. McKnight.  (AR 30-31).

The ALJ provided a very detailed review and analysis of the record.  (AR 19-31).  As noted by the ALJ, although Dr. Seely reported that Plaintiff was severely limited in January of 2001, that Plaintiff could only sit, stand, or walk 60 minutes before needing to lie down and was disabled in June of 2003, that Plaintiff was limited to sedentary work in October 2003 and July 2004, and that Plaintiff could not complete work tasks and was unable to work competitively in August of 2004, Dr. Seely's opinions were conclusory and based on little in the way of objective evidence.  (AR 30-31).  Dr. Seely's examinations were very limited and did not included much in the way of objective findings.  It appears that Dr. Seely based the reports of limitations on Plaintiff's self report and, as correctly determined by the ALJ (*see, supra*), Plaintiff is not entirely credible.[3]  (AR 30).

As noted by the ALJ, Dr. Larson, a specialist in neurology, could find no basis for Plaintiff's pain complaints.  (AR 30-31).  In January of 2003, Dr. Larson stated that, based on his

---

[3]The ALJ's credibility finding is supported by the evidence of record and free of error.  *See, Tonapetyan v. Halter*, 242 F.3d  1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

examination and 2003 lumbar x-rays, there was no anatomical reason for Plaintiff's reported back pain.  (AR 227).  Dr. Price indicated in March of 2003 that Plaintiff would be limited to light exertion work with some postural and manipulative limitations.  (AR 180-181).  Dr. Price further opined that Plaintiff was "capable of doing a sitting, intermittent frequent movement job, where he stands, sits, and moves around on a reasonable basis for up to six hours in an eight-hour day, five days a week for employment activity."  (AR 181).  State agency reviewing physician, Morris Fuller, M.D., also determined that Plaintiff could perform light work with some postural limitations and a limitation in reaching with his left arm.  (AR 189-191).

Drs. Larson, Price and Fuller found that Plaintiff was capable of performing light exertion work with certain limitations, contrary to the findings of Dr. Seely.  The weight of the record evidence does not support the disabling findings of Dr. Seely, which were apparently based on Plaintiff's non-credible subjective complaints.  Accordingly, it was not err for the ALJ to reject Dr. Seely's opinions in favor of the other physicians of record in this case.  Substantial evidence supports the ALJ's findings with respect to Plaintiff's physical RFC.

Regarding Plaintiff's cursory argument as to the medical expert in this case (Ct. Rec. 16, p. 35), Dr. McKnight's findings are consistent with the record evidence.  As noted above, Dr. Everhart examined Plaintiff and noted that findings suggested exaggeration of symptoms and malingering.  (AR 271).  Dr. Everhart indicated that the results of the MMPI-2 revealed an invalid profile suggesting exaggeration of symptoms.  (AR 271).  Dr.

Everhart also indicated that the results of the Rey 15 Item test
suggested that Plaintiff was not making a credible effort and
indicated malingering.  (AR 271).  The medical expert, Dr.
McKnight, testified at the administrative hearing that it is
"unheard of to score that low" on the Rey 15 Item test.  (AR 382).
Based on Dr. Everhart's testing, Dr. McKnight indicated that
Plaintiff was "simply not credible."  (AR 385).  Based on the
evidence of malingering and a review of the record, Dr. McKnight
opined that Plaintiff had no medically determinable mental
impairment.  (AR 385).  Plaintiff provides no basis to disapprove
of Dr. McKnight's testimony or the ALJ's reliance thereon.  There
was sufficient evidence in the record to support the ALJ's finding
that Dr. McKnight's testimony was persuasive.

The ALJ's review and assessment of the medical evidence is
rational and properly supported.[4]  The undersigned finds that
substantial record evidence supports the ALJ's RFC determination
that Plaintiff is able to perform light exertion level work with
the postural limitations noted.

**C.  Vocational Expert Testimony**

Plaintiff lastly contends that the ALJ erred by relying on
the vocational expert's testimony in response to a hypothetical
not supported by the weight of the record evidence.  (Ct. Rec. 16,
pp. 39-41).  The Commissioner responds that the ALJ properly

///

----

[4]The Court must ultimately uphold the Commissioner's decision where
the evidence is susceptible to more than one rational interpretation.
*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  It is not the role
of the Court to second-guess the Commissioner.  If evidence supports more
than one rational interpretation, the Court must uphold the decision of the
Commissioner.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

relied on the vocational expert's testimony which was supported by substantial evidence and free of error.  (Ct. Rec. 21, pp. 18-20).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that he retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite his identified limitations only after Plaintiff has established a prima facie case of disability by demonstrating he cannot return to his former employment.  *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986).  The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  In this case, the ALJ relied upon the testimony of a vocational expert.

As determined above, the weight of the record evidence in this case supports the ALJ's ultimate RFC finding that Plaintiff was capable of performing light exertion work with certain postural limitations.  *See supra*.  At the administrative hearing held on September 30, 2004, the vocational expert testified that

with the restrictions determined by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of cashier II, fast food worker, entry-level retail sales clerk, light assembler, light parcel courier/messenger, agricultural sorter and flagger. (AR 362-364). Since the vocational expert's testimony was based on a proper RFC finding by the ALJ, Plaintiff's argument is without merit.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned concludes that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 15**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___28th___ day of March, 2007.

s/Michael W. Leavitt
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE